IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

AUDRIANA D. MASTERS,
    Plaintiff,

vs.                                               Case No.: 5:16cv238/EMT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]
    Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 9, 10). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Fed. R. Civ. P. 25(d), she is therefore automatically substituted for Carolyn W. Colvin as the Defendant in this case.

I.   PROCEDURAL HISTORY

On September 6, 2012, Plaintiff filed an application for SSI, in which she alleged disability beginning the same day, September 6, 2012 (tr. 11).[2] Her application was denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ").  A hearing was held on August 13, 2014, and on November 24, 2014, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time through the date of her decision (tr. 11–26).  The Appeals Council subsequently denied Plaintiff's request for review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.[3]

II.   FINDINGS OF THE ALJ

In her written decision denying Plaintiff's claims, the ALJ made the following relevant findings (*see* tr. 11–26):

---

[2] All references to "tr." refer to the transcript of Social Security Administration record filed on November 29, 2016 (ECF No. 12).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

[3] The time frame relevant to Plaintiff's claim for SSI, and this appeal, is September 6, 2012 (the date Plaintiff applied for SSI), through November 24, 2014 (the date the ALJ issued her decision).  *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file).

Case No.: 5:16cv238/EMT

(a) Plaintiff has not engaged in substantial gainful activity since September 6, 2012, the date she applied for SSI and the date she alleges she became disabled;

(b) Plaintiff has the following severe impairments: borderline intellectual functioning versus mild mental retardation, depression, anxiety, post-traumatic stress disorder, and tachycardia with arrhythmia;

(c) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(d) Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c), except she is limited to simple, routine, repetitive tasks with only occasional decision making; she is limited to occasional changes in the work-setting with no fast-paced production rate requirements such as assembly line work; and she can only have occasional interaction with the public, coworkers, and/or supervisors;

(e) Plaintiff has no past relevant work;

(f) Plaintiff was born on April 8, 1993, and thus was 19 years old—defined as a " younger" individual (one aged 18–49)—on the date she applied for SSI;

(g) Plaintiff has a limited education, but she is able to communicate in English;

(h) Transferability of job skills is not an issue because Plaintiff has no past relevant work;

(i) Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform;

(j) Plaintiff has not been under a disability, as defined in the Act, since September 6, 2012.

III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125

F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1.  If the claimant is performing substantial gainful activity, she is not disabled.

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks disability insurance benefits ("DIB") or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (see 20 C.F.R. §§ 404, 416, respectively). Therefore, citations in this Order should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

Case No.: 5:16cv238/EMT

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then

prove she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV. RELEVANT EVIDENCE OF RECORD

A. Plaintiff's Personal History

Plaintiff testified that she completed the seventh grade, after which she was home-schooled but evidently only through approximately an eighth-grade equivalent (*see* tr. 38–39; *see also* tr. 356 (indicating to a consultative examiner that she "stopped high school in 9th grade")). She can read and write (tr. 38–39). Plaintiff was pregnant at the time of her hearing before the ALJ and had a child who was two-years-old at that time; Plaintiff noted that she cared for her child with the assistance of her boyfriend and her aunt (tr. 36–37, 40). Plaintiff, through her attorney, urged the ALJ to find her disabled at step three of the sequential analysis, arguing that Plaintiff meets the criteria of Listing 12.05B and/or C for intellectual disability (tr. 36–37), which is the same claim, and the only claim, she raises in this appeal (*see* ECF No. 14 at 2–9).

B. Plaintiff's Medical History[5]

In support of Plaintiff's argument that she meets the criteria of Listing 12.05, Plaintiff primarily relies upon the findings of Paul Tritsos, PsyD, who examined her

---

[5] The summary of Plaintiff's medical history is limited to evidence relevant to the lone claim raised in this appeal.

on two occasions at the request of the Social Security Disability Determinations Services ("DDS").

Dr. Tritsos first examined Plaintiff on November 7, 2012 (*see* tr. 356–57). Plaintiff reported she had been in mental-health treatment "on and off since childhood" (tr. 356). She stated she was not taking any medications at that time due to her pregnancy but noted she had previously been prescribed Adderall (*id.*). She reported depressive symptoms of poor motivation, irritability, poor focus, poor sleep, social withdrawal, and anhedonia (*id.*). She also reported "heightened anxiety states" and feeling overwhelmed in "larger social situations" (*id.*). Plaintiff noted "fluctuating but overall adequate ability to manage with activities of daily living" (*id.*).

Upon mental status examination, Plaintiff incorrectly stated the date of her examination with Dr. Tritsos, could not recall any of three words, was unable to correctly perform "serial 7 calculations" backward from 100, and could not name the vice president of the United States (tr. 356). She could, however, name the president, spell "house" forward and backward, name a large river, and generally respond correctly to a number of other questions (*see* tr. 356–57). Plaintiff had appropriate eye-contact and thought content; she did not appear to be experiencing hallucinatory or psychotic symptoms; her speech was within normal limits; and her insight and

judgment appeared fair, though she displayed a depressed mood and constricted affect (tr. 357).

Dr. Tritsos diagnosed major depressive disorder, recurrent, currently moderate, and history of familial discord (molestation) (tr. 357). He also assessed a Global Assessment of Functioning ("GAF") score of 53.[6] As for Plaintiff's prognosis, Dr. Tritsos opined as follows:

> [Plaintiff] appears overall able to handle activities of daily living/hygiene. She has experienced levels of social withdrawal and trouble with concentration, with variable impact on her day-to-day functioning. If greater specificity is needed regarding cognitive functioning and attentional issues, IQ and memory testing would later need to be pursued. She is recommended to resume mental health treatment when possible for emotional support and attention to dysphoric mood symptoms.

(tr. 357). Lastly, he noted that Plaintiff appeared competent to manage her own funds for basic, day-to-day decisions (*id*.).

On May 21, 2014, Plaintiff returned to Dr. Tritsos for a second mental status examination, as well as IQ and memory testing (*see* tr. 365–67). Dr. Tritsos noted he

---

[6] Global assessment of functioning is the overall level at which an individual functions, including social, occupational, academic, and other areas of personal performance. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30–32 (4th ed. 1994). It may be expressed as a numerical score. *Id.* at 32. A score between 51 and 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

Case No.: 5:16cv238/EMT

had reviewed "psychiatry notes [from] throughout 2009 discussing treatment for attention-deficit disorder"; he also reviewed his own notes from his first evaluation of Plaintiff (tr. 365). Plaintiff's reports to Dr. Tritsos at this visit were largely the same as before (e.g., regarding depressive symptoms, lack of hallucinations, feelings she experiences in larger social situations) (*id.*).[7] Plaintiff again reported "overall adequate ability to manage with activities of daily living" (*id.*). Although there were some differences between the first and second mental status examinations, the differences are minor and of little consequence, if any (*compare* tr. 356–57 *with* tr. 365–66).

Although Dr. Tritsos' assistant, Cindy Wilhelm, administered the WAIS-IV and WMS-IV tests to Plaintiff, Dr. Tritsos interpreted the tests and noted that he considered their results to be valid (tr. 366). In pertinent part, the WAIS testing resulted in a verbal comprehension index score of 68 and a full scale IQ score of 55 (*id.*).

---

[7] At Plaintiff's first visit with Dr. Tritsos she reported having been molested at the age of thirteen (tr. 356); at her second visit she reported "another sexual assault" when she was sixteen (tr. 365). With regard to her history of sexual assault, Dr. Tritsos noted at Plaintiff's second visit that "[o]ther than occasional 'bad dreams,' post-trauma symptoms do not appear evident and more of the trouble seems to lie in the realm of depression" (*id.*).

Case No.: 5:16cv238/EMT

Dr. Tritsos assessed, in relevant part: dysthymic disorder; mild mental retardation; history of familial discord (molestation); and a GAF of 50 (tr. 367).[8] He noted the following as to Plaintiff's prognosis:

> [Plaintiff] appears able to handle activities of daily living/hygiene. However, she does appear to evidence adaptive skills problems regarding communication/social functioning, functional academics, and self-direction. As such, mild mental retardation appears to be most fitting when interpreting her IQ and memory scores. Attention-deficit disorder would not be[] applicable, since [her] cognitive functioning reflects more global impairment. [Plaintiff] is otherwise recommended to continue with mental health treatment for emotional support and attention to dysphoric mood symptoms.

(tr. 367). Dr. Tritsos also noted that Plaintiff did not appear competent to manage her own funds (*id.*). He completed a Medical Source Statement form regarding Plaintiff's mental functional abilities, generally rating Plaintiff's limitations as "mild" or "moderate" with regard to simple work-related functions and interaction with others (tr. 368–69).

C.  Other Information Within Plaintiff's Claim File

A vocational expert ("VE") testified at Plaintiff's hearing. In summary, the VE opined that a hypothetical person with Plaintiff's RFC could perform various

---

[8] A GAF score between 41 and 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 30–32 (4th ed. 1994).

unskilled jobs at the medium level of exertion, including laundry worker, kitchen assistant, and automobile detailer (tr. 54–55). The VE noted that a person who was limited to "no decision-making at all" instead of occasional decision-making, but who otherwise had the same RFC as Plaintiff, would be unemployable (tr. 55).

V.   DISCUSSION

Initially, although Listing 12.05 has been amended since the ALJ issued her decision, this court must apply Listing 12.05 as it read on the date of the ALJ's decision. Rudolph v. Comm'r, Soc. Sec. Admin., No. 17-10190, 2017 WL 4074534, at *2 (11th Cir. Sept. 14, 2017) (citing Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138 n.1, 66167 (Sept. 26, 2016) (amending Listing 12.05 and noting that the Social Security Administration "expect[s] the Federal courts will review [its] final decisions using the rules that were in effect at the time [it] issued the decisions")).

At the relevant time, the introductory paragraph and subsections B and C of Listing 12.05 set forth the following criteria in order for a disability to be found:

> [(1)] significantly subaverage general intellectual functioning with [(2)] deficits in adaptive functioning [which, (3)] initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Case No.: 5:16cv238/EMT

* * *

 B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

 C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (eff. Apr. 1, 2014).

Plaintiff's arguments here center on the full scale IQ score of 55 assessed by Dr. Tritsos. Plaintiff contends that the ALJ erred by not finding that she, on account of this IQ score, met or equaled the criteria for Listing 12.05B, such that she should have been presumed disabled under step three without further inquiry. Alternatively, Plaintiff points to the verbal performance IQ score of 68, also assessed by Dr. Tritsos, and argues that the ALJ should have found her disabled under Listing 12.05C based on that score and her other physical or mental impairments that impose additional and significant work-related limitation of function. Plaintiff's arguments fail.

The Eleventh Circuit has made clear that "[t]o qualify under Listing 12.05, [a claimant] first must meet the diagnostic criteria in 12.05's introductory paragraph." James v. Comm'r, Soc. Sec. Admin., 657 F. App'x 835, 837 (11th Cir. 2016) (citing Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 ("Listing 12.05 contains an introductory paragraph with the

diagnostic description for intellectual disability.")). *See also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph [of § 12.05] and any one of the four sets of criteria, we will find that your impairment meets the listing."). Thus, in order to be found disabled under <u>any</u> subsection of Listing 12.05, Plaintiff must first satisfy all three criteria of the introductory paragraph. And here, the ALJ concluded that Plaintiff did not have deficits in adaptive functioning prior to the age of 22 and thus did not meet the criteria of the paragraph (*see* tr. 14).[9] More specifically, the ALJ stated, "I give little weight to counsel's argument that [Plaintiff] meets the criteria of 12.05. In making this finding, I cite <u>significant</u> evidence of adaptive functioning, including but not limited to her ability to perform activities of daily living. . . ." (tr. 14) (emphasis added).

The ALJ then proceeded, in a manner consistent with the regulations, to consider various "adaptive activities," such as "cleaning, shopping, cooking . . . [and] caring appropriately for [] grooming and hygiene" (tr. 15 (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C1)). And, the ALJ noted that the Commissioner will "assess the quality of these activities by their independence, appropriateness, effectiveness,

---

[9] Plaintiff was 21-years-old when the ALJ issued her decision. Thus, the evidence of record necessarily concerns Plaintiff's functional abilities prior to the age of 22.

Case No.: 5:16cv238/EMT

and sustainability" and "determine the extent to which [a claimant is] capable of initiating and participating in activities independent of supervision or direction" (*id*.).[10]

The ALJ then pointed to evidence in the record which, in general, demonstrates Plaintiff's ability to cope with common life demands and meet the standards of personal independence expected of someone of her age and circumstances. The ALJ referenced Plaintiff's own reports regarding taking care of her infant daughter all day, including bathing her, feeding her, playing with her, and changing her diapers (tr. 15 (referencing Exhibit 7E (tr. 205–12), an adult "Function Report" completed by Plaintiff in connection with her claim for SSI)). The ALJ also pointed to Plaintiff's ability to care for herself and her household, as evidenced by Plaintiff's ability to perform her own grooming and hygiene, as well as perform chores, such as cleaning, washing clothes, vacuuming, and mopping (*id*.). The ALJ further cited Plaintiff's daily activities, which include playing video games, shopping, cooking ("frozen

---

[10] Although the Social Security Administration has not specifically defined "deficits in adaptive functioning," as that term is used in Listing 12.05's introductory paragraph, "the Diagnostic and Statistical Manual of Mental Disorders ("DSM") states that adaptive functioning 'refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociological background, and community setting.'" James, 657 F. App'x at 837 n.2 (quoting DSM–IV–TR at 42). *See also* Heller v. Doe, 509 U.S. 312, 329 (1993) (discussing mental retardation in the context of Kentucky's involuntary commitment procedures and describing "deficits or impairments in adaptive functioning," as concerning "the person's effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group") (internal quotations and citation omitted).

Case No.: 5:16cv238/EMT

dinners, pizza, and cabbage with sausage"), going outside, walking a half-mile, and obtaining a learner's driving permit (tr. 15; *see also* tr. 205–12), as well as Plaintiff's ability to sit through an hour-long face-to-face encounter with a DDS employee with no difficulty (tr. 15 (citing tr. 175–76)).[11]

Continuing, the ALJ noted that even with the IQ scores assessed by Dr. Tritsos, he never indicated that Plaintiff could not work (tr. 16). In fact, following his more recent evaluation of Plaintiff, Dr. Tritsos opined that Plaintiff was able to "handle activities of daily living" (tr. 367). He further opined, as the ALJ noted, that Plaintiff had only "mild" limitations in her ability to understand, remember, and carry out simple instructions and in her ability to interact appropriately with the public and co-workers (tr. 16 (citing tr. 368, 369)). The ALJ acknowledged that Dr. Tritsos assessed some moderate limitations, but she also correctly noted that the form Dr. Tritsos used defines moderate limitations as "more than a slight limitation . . . but the individual is still able to function satisfactorily" (*id.* (citing tr. 368)). The ALJ then incorporated various mental limitations into Plaintiff's RFC, based upon Dr. Tritsos' opinions (*see*

---

[11] The DDS employee commented that after interviewing Plaintiff for one hour, he/she "did not observe any reason why she can't hold a job and earn a living" (tr. 176).

Case No.: 5:16cv238/EMT

tr. 16).[12] The ALJ's factual findings are supported by the record, as is her RFC determination.

"Although a valid qualifying IQ score creates a rebuttable presumption that a claimant manifested deficits in adaptive functioning prior to age 22, the Commissioner may rebut the presumption with evidence relating to a claimant's daily life," as the ALJ did here. James, 657 F. App'x at 837 (citing Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (noting presumption); Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (recognizing a valid IQ score was not conclusive evidence of intellectual disability when "the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.")). *See also, e.g.*, Garrett v. Astrue, 244 F. App'x 937, 939 (11th Cir. 2007) (upholding ALJ's finding that the required limitations to adaptive functioning were not present, despite claimant's low IQ score, where he was "able to cook simple meals; perform chores such as dishwashing and yard work; and build model cars" and his daily activities included church attendance, television viewing, card playing, and walking in the mall).

Finally, in addition to considering Plaintiff's daily activities and adaptive functioning, the ALJ also found that Plaintiff was not fully forthright in connection with her claim for SSI (tr. 15). In support, the ALJ pointed to inconsistencies between

---

[12] The only "marked" or "extreme" limitations assessed by Dr. Tritsos concerned complex instructions or decisions in the workplace (*see* tr. 368–69). The RFC makes clear that Plaintiff is incapable of performing any such task.

Case No.: 5:16cv238/EMT

Plaintiff's hearing testimony and the prior reports she made to DDS staff regarding her activities and abilities (*see* tr. 15). The undersigned concludes that the ALJ's findings in this regard are substantially supported by the record (to be sure, Plaintiff does not allege that the ALJ erred in making her credibility findings).

Thus, because the ALJ properly concluded that Plaintiff did not meet the criteria of Listing 12.05's introductory paragraph, she did not err in failing to find Plaintiff disabled under any subsection of that listing.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making her findings, or that any other ground for reversal exists.

Accordingly, it is **ORDERED** that:

1. Nancy A. Berryhill is substituted for Carolyn W. Colvin as Defendant in this action.

2. The decision of the Commissioner is **AFFIRMED**, this action is **DISMISSED,** and the clerk is directed to close the file.

At Pensacola, Florida this 27th day of September 2017.

          /s/ *Elizabeth M. Timothy*
          **ELIZABETH M. TIMOTHY**
          **CHIEF UNITED STATES MAGISTRATE JUDGE**